# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MAXUM INDEMNITY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-14-0894-HE |
| | ) | |
| MUSTANG ROOFING, LLC, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Plaintiff Maxum Indemnity Company ("Maxum") filed this declaratory judgment action against Mustang Roofing, LLC ("Mustang Roofing"), Atlantic Casualty Insurance Company ("ACIC") and AG Security Insurance Company ("AG Security"). The lawsuit involves a dispute between insurers as to which is liable for water damage that a commercial building sustained during a storm. The building was being reroofed when the storm hit the area. The conflict is between the companies that insured the roofing contractor, the roofing subcontractor and the building itself. Maxum seeks a declaration regarding both its obligations under the insurance policy it issued Mustang Roofing and priority of coverage issues between its policy and a policy issued by ACIC. ACIC filed a third party complaint against its insured, Cristian Antunez d/b/a Antunez Construction Company ("Antunez"),[1] a crossclaim against AG Security, which insured the building, and Mustang Roofing, and a counterclaim against Maxum. ACIC has filed a motion for summary judgment seeking a declaration that its policy affords no coverage for any

---

[1]*ACIC states that it has been unable to serve Antunez. The docket sheet reflects that ACIC's attempts to serve Cristian Antunez have been unsuccessful. See Doc. #28.*

damages caused by Antunez's alleged negligence.[2] If the court should determine that coverage exists under both ACIC's and Maxum's policies, then ACIC seeks a declaration that the insurers share the property loss equally.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine dispute as to a material fact 'exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'" Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting Zwygart v. Bd. of Cnty. Comm'rs, 483 F.3d 1086, 1090 (10th Cir.2007)). Having considered the submissions of the parties in light of this standard, the court concludes ACIC's motion should be denied.

## Background

Mustang Roofing contracted with MRP Properties in March 2013 to install a new roof – a TPO roofing system – on a commercial building it owned, the Memorial Road Plaza, in Edmond, Oklahoma. Mustang Roofing subcontracted the roofing work to Antunez.

A TPO roof is a membrane system, which is installed over an existing roof. Wood fiber insulation is screwed to the existing roof. The insulation is then covered with ten

---

[2]*Maxum also filed a motion for summary judgment, which will be addressed in a separate order.*

foot wide rolls of TPO, which are applied side-to-side, beginning at the high end of the roof. On the Memorial Road Plaza, because the high side of the roof was to the north, the rolls were applied east to west. The strips were mechanically fastened with screws a few feet from the edge of each strip. Each subsequent strip would overlap the previous strip to cover the screws and the north edge of the subsequent strip would be heat-welded to the previous strip. The south or bottom edge of the strip, referred to as the "tie-in," remained loose until another strip was installed after it.

While working on the roof on July 23, 2015, Antunez encountered a penetration[3] that had been removed, which left a two foot by two foot hole into the interior of the building. Antunez covered it with a piece of plywood and screwed that to the underlying roof. The wood fiber insulation and the TPO roof covering were then placed on top of the plywood. The last strip of TPO installed that day extended approximately five feet past the plywood area. Early the next morning a storm with high winds and four inches of rain hit the Memorial Road Plaza. Water entered the building, causing property damage.

Tony Gore, the owner of Mustang Roofing, testified that he had checked with the National Weather Service forecast and no rain or high winds were predicted for July 23rd, 24th or July 25th in the area of Memorial Road Plaza. However, around 1:00 p.m. on July 23rd, he heard on the radio about a storm that had popped up in Kansas. It was predicted to die by the time it got to Ponca City, Oklahoma, but it "kept coming and come

---

[3]*An example of a penetration is a PVC pipe that comes up through the roof. Doc. #32-1, p. 19.*

into Oklahoma City." Doc. #32-1, p. 12.[4] Storms frequently approach from the southwest in Oklahoma and winds commonly occur during rainstorms in the state.

During the storm, the southwest portion of the last strip of the TPO roofing material blew back, exposing the plywood-covered hole, allowing rainwater to enter the building. The plywood covering the hole was not waterproof.

Gore testified that the process the roofing crew used on July 23rd, of extending the TPO roofing material a few feet past the wood fiber insulation and then securing the tie-in edge by weighting it down with buckets of adhesive, boxes of screws and unused rolls of TPO, was a suitable temporary covering for the roof in light of the weather forecast by the National Weather Service, which had not predicted rain. He stated that the TPO material "shouldn't have blew back and leaked." Doc. #43-1, p. 40. The roofing crew could have used a termination bar to secure the tie-in edge of the TPO material for the night.[5]

ACIC provided Antunez with general liability insurance coverage. The policy included an endorsement, which required the insured to put a temporary waterproof covering into place anytime the insured left the job site, that was able to withstand normal elements and large enough to cover the area being worked on. Failure to do so eliminated coverage for property damage caused by rain. The endorsement provided in pertinent

---

[4] *Page references for briefs and exhibits are to the CM/ECF document and page number.*

[5] *Gore testified the termination bar was used "[i]f they're calling for rain," but that he did not instruct Tim Swiger, the project manager, to do that because he "wouldn't have had enough time to do that." Doc. #31-1, p. 11.*

part:

## LIMITATION - ROOFING

> This insurance does not apply to any claim, loss, costs, or expense due to "property damage" arising out of rain, snow, hail or any combination of these if a suitable waterproof temporary covering, able to withstand the normal elements and large enough to cover the area being worked on, has not been properly secured in place. This cover is to be put into place any time any insured leaves the job site. Relative to roofing operations, the use of tar paper and/or felt paper does not constitute suitable waterproof temporary covering.
>
> Further, this insurance does not apply to any claim, loss, costs or expense for "bodily injury," "property damage" or "personal and advertising injury" as a result of any operations, from initial inspection and pre-installation work to ongoing operations and including completed operations, involving any hot tar, wand, sprayed or sprayed-on material, torch or heat applications, hot membrane roofing or any membrane roofing system requiring hear for application.
>
> ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Doc. #31-3.

Antunez provided Mustang Roofing with a certificate of insurance before beginning work, which demonstrated that Antunez had obtained liability insurance from ACIC. Mustang Roofing was identified as the certificate holder.

Maxum insured Mustang Roofing. Both ACIC's policy and Maxum's policy provide that their insurance is primary, unless other primary insurance is available. In that situation, the other policy becomes contributory.[6] AG Security, which had insured

---

[6]*If, however, Maxum's excess insurance clause applies, its insurance is excess. See Doc. #32-4, p. 4 (Section IV(4)(b)(1)(b)).*

the building, paid the losses resulting from the water damage and now seeks to recover from Mustang Roofing and Antunez, claiming they are liable for the damage.

Analysis

ACIC asserts that the roofing endorsement in its policy excludes coverage for the water damage to the Memorial Road Plaza because Antunez failed to secure a temporary waterproof covering when it left the job site on July 23, 2013, and because Antunez was installing a membrane roofing system that required heat for its application. ACIC argues in the alternative that, if there is coverage, then its policy is not excess to Maxum's policy, but shares equally for the loss. AG Security and Mustang Roofing respond that material fact questions preclude summary judgment on the issue of whether a suitable waterproof covering was in place at the end of the day on July 23rd. They argue that ACIC's reliance on the heat application exclusion is misplaced. Maxum only disputes ACIC's motion to the extent ACIC claims that its policy should share equally with Maxum's for the loss, if there is coverage under both policies.

ACIC initially argues that it is undisputed that the plywood covering the two by two hole in the roof of the Memorial Road Plaza was not waterproof. It contends that, by failing to install a termination bar on the TPO roofing material before it left the job site on July 23rd, Antunez did not ensure that a waterproof covering was securely placed over the hole. Coverage is therefore excluded, it asserts, under the specific terms of the endorsement.

The roofing exclusion applies for property damage resulting from rain "if a

6

suitable waterproof temporary covering, able to withstand the normal elements and large enough to cover the area being worked on, has not been properly secured in place . . . any time any insured leaves the job site." Doc. #31-3. Neither "normal elements" nor "properly secured" are defined in the policy and material fact disputes exist regarding both phrases. ACIC has offered no evidence to suggest that the weather conditions which existed in the early morning hours of July 24th – conditions which produced high winds and four inches of rain – could be considered "normal elements," which the temporary covering Antunez had been providing at the end of each day should have withstood. Likewise, a dispute also exists as to whether an appropriate waterproof covering had been "properly secured" due to Gore's testimony that, with no rain in the forecast, the cover Antunez put into place when it left the job site was a suitable covering for the roof.

ACIC next claims that the roofing endorsement excludes coverage under the policy because of the type of roof system being installed. ACIC misreads the endorsement. It provides that there is no coverage for property damage "as a result of any operations . . . involving any . . . hot membrane roofing or any membrane roofing system requiring heat for application." *Id.* ACIC has offered no evidence that the property damage resulted from the roofing operations.[7] The evidence before the court is undisputed that the damage was caused by leaking from penetrations in the roof and water

---

[7]*AG Security and Mustang Roofing also introduced evidence that heat was not used in the application of the TPO roofing system to the Memorial Road Plaza. Although heat was used to attach the edge of one TPO strip to the previous strip, heat was not used to attach the TPO roofing material to the insulation or the existing roof surface.*

entering the building through the two foot by two foot cutout that was exposed when the wind blew the tie-in edge of the TPO roof covering back.

The remaining issue consists of ACIC's request that the court determine that Maxum's policy is not excess to its policy. That decision hinges in part on whether Mustang Roofing is an additional insured on ACIC's policy. The court denied Maxum's motion for summary judgment which sought, in part, a determination that Mustang Roofing was an additional insured on ACIC's policy. As no other party moved for summary judgment on that issue, the court did not definitively decide whether Mustang Roofing was or was not an additional insured on ACIC's policy.[8] Therefore, the court cannot at this time determine whether ACIC and Maxum must provide coverage for the loss in equal shares, if coverage is found to exist under both policies.

Accordingly, the motion for summary judgment filed by ACIC [Doc. #31] is **DENIED**.

**IT IS SO ORDERED**.

Dated this 9th day of September, 2015.

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[8]*In light of the evidence and arguments presented on the issue, it is unlikely that Mustang Roofing will be found to be an additional insured under ACIC's policy*