# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MAXUM INDEMNITY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-14-0894-HE |
| | ) | |
| MUSTANG ROOFING, LLC, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

# **ORDER**

Plaintiff Maxum Indemnity Company ("Maxum") filed this declaratory judgment action against Mustang Roofing, LLC ("Mustang Roofing"), Atlantic Casualty Insurance Company ("ACIC") and AG Security Insurance Company ("AG Security"). The lawsuit involves a dispute between insurers as to which is liable for water damage that a commercial building sustained during a storm. The building was being reroofed when the storm hit the area. The conflict is between the companies that insured the roofing contractor, the roofing subcontractor and the building itself. Maxum seeks a declaration regarding both its obligations under the insurance policy it issued Mustang Roofing and priority of coverage issues between its policy and a policy issued by ACIC. ACIC filed a third party complaint against its insured, Cristian Antunez d/b/a Antunez Construction Company ("Antunez"), a crossclaim against AG Security, which insured the building, and Mustang Roofing, and a counterclaim against Maxum.

Maxum has filed a motion for summary judgment seeking a declaration that no coverage exists under the insurance policy it issued Mustang Roofing or, if coverage

exists, that it is excess to coverage provided by ACIC. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Fed.R.Civ.P. 56(a). "A genuine dispute as to a material fact 'exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'" Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting Zwygart v. Bd. of Cnty. Comm'rs, 483 F.3d 1086, 1090 (10th Cir.2007)). Having considered the submissions of the parties in light of this standard, the court concludes Maxum's motion should be denied.[2]

## Background

Mustang Roofing contracted with MRP Properties in March 2013 to install a new roof – a TPO roofing system – on a commercial building MRP owned, the Memorial Road Plaza, in Edmond, Oklahoma. Mustang Roofing hired Tim Swiger to be the project supervisor and subcontracted the roofing work to Antunez. As a condition to working on the project, Antunez provided Mustang Roofing with certificates of liability insurance identifying Mustang Roofing as the certificate holder.[3]

A TPO roof is a membrane roofing system, which is installed over an existing

---

[1] ACIC also filed a motion for summary judgment, which will be addressed in a separate order.

[2] Page references for briefs and exhibits are to the CM/ECF document and page number.

[3] One certificate was for workers' compensation insurance and the other was for general liability insurance. See Doc. #32-3, pp. 1-2.

2

roof. Wood fiber insulation is screwed to the existing roof. The insulation is then covered with ten foot wide rolls of TPO, which are applied side-to-side, beginning at the high end of the roof. On the Memorial Road Plaza, because the high side of the roof was to the north, the rolls were applied east to west. The strips were mechanically fastened with screws a few feet from the edge of each strip. Each subsequent strip would overlap the previous strip to cover the screws and the north edge of the subsequent strip would be heat-welded to the previous strip. The south or bottom edge of the strip, referred to as the "tie-in,"[4] remained loose until another strip was installed after it.

While working on the roof on July 23, 2015, Antunez encountered a penetration[5] that had been removed, which left a two foot by two foot hole into the interior of the building. Antunez covered it with a piece of plywood and screwed that to the underlying roof. The wood fiber insulation and the TPO roof covering were then placed on top of the plywood. The last strip of TPO installed that day extended approximately five feet past the plywood area.

Tony Gore, the owner of Mustang Roofing, instructed Swiger to not let Antunez get too far ahead in installing the roof system, in order to keep "everything watertight as we go." Doc. #32-1, pp. 9-10. At the same time the roofing work was being done, a heating and air conditioning crew was removing air conditioning units that were on the

---

[4]*Until the roof is completely installed each day, "there's a tie-in where you stop off at." Doc. #32-1, p. 15.*

[5]*An example of a penetration is a PVC pipe that comes up through the roof. Doc. #32-1, p. 19.*

roof. The crew was removing duct work and reinstalling new curbs around the units.

Gore testified that he had checked with the National Weather Service forecast and no rain or high winds were predicted for July 23rd, 24th or July 25th in the area of Memorial Road Plaza. However, around 1:00 p.m. on July 23rd, he heard on the radio about a storm that had popped up in Kansas. It was predicted to die by the time it got to Ponca City, Oklahoma, but it "kept coming and come into Oklahoma City." Doc. #32-1, p. 12. Gore called Swiger when he learned of the storm, told him there was a chance "that rain could make it into Oklahoma City" and told him to make sure the workers got "everything in to dry." *Id.* at p. 13.

Dale Odom, who owned Memorial Road Plaza,[6] called Gore the next day, the morning of July 24th, and informed him that the property had sustained water damage. Upon arriving at the site, Gore observed areas of the roof where water had entered the building. He testified during his deposition in April 2015, that there was leaking from penetrations in the roof, but that most of the water entered the building through the two foot by two foot cutout that had been patched with plywood, but was exposed when the wind, during the storm, blew the tie-in edge of the TPO roof covering back. *Id.* at pp. 15-16. In a letter dated May 13, 2014, that Mr. Gore sent Clint Callaway, an adjuster with U.S. Property & Casualty, approximately a year earlier, Mr. Gore attributed the damage completely to the penetrations. Doc. #32-2, pp.4,5.

---

[6]Maxum refers to Odom in its brief as the "property owner." The court assumes Odom owns MRP Properties.

Gore's testimony regarding the adequacy of the workers' efforts at the end of the day on July 23rd to prepare a temporary covering of the roofing project, in light of the weather that had been predicted by the National Weather Service, was similarly equivocal. At one point Gore stated that he did not believe the caulking was adequate because "[s]ome of the penetrations, the caulking was a little sloppy on there." Doc.#32-1, p. 27. He later stated, though, that "[t]here was nine guys up there, they done everything they could." Doc. #42-1, p. 39. He also testified that he believed Antunez may have installed "a little more roof than they should have installed" that day and not left sufficient time to protect the penetrations. Doc. #32-1, p. 18.

With respect to securing the TPO roofing material, Gore testified that the process that was used on July 23rd, of securing the unfinished edge of the TPO material with buckets of adhesive, boxes of screws and unused rolls of TPO, was an adequate covering for the roof in light of the weather forecast, which had not predicted rain. *Id.* at pp. 38-40. Gore testified that, because of the flooding and damage to the property, he terminated Antunez from the project.

Maxum issued a commercial general liability policy to Mustang Roofing that was effective December 31, 2012, to December 31, 2013.[7] The policy included an endorsement ("Roofing Contractors Endorsement"), which provided in pertinent part that:

---

[7]*Maxum states in its brief that the policy dates were December 12, 2012 to December 12, 2013. Doc. #32, p. 6. The policy ran, though, from December 31, 2012 to December 31, 2012. Doc. #32-4, p. 2.*

5

A. This insurance does not apply to "property damage" arising out of wind, hail, snow, ice, rain or a combination of any of these unless:

1. You have taken prudent steps to determine any approaching adverse weather; and

2. You have provided a suitable temporary covering able to withstand the normal elements. (The covering is to be put into place any time you leave the job site.)

Exclusion- Described Hazards-Roofing Contractors, Doc. #32-4, p. 7.

The policy also had an Independent Contractors Warranty Endorsement, which required the insured to obtain certificates of insurance from independent contractors it hired. The endorsement provided that:

It is hereby understood and agreed that the following conditions are included as a part of this policy. The insured will obtain certificates of insurance from all independent contractors providing evidence of:

1. Limits of Liability equal to or greater than the coverage provided by this policy;

2. Commercial General Liability coverage equal to or broader than the coverages provided by this policy.

3. Workers Compensation Insurance in compliance with the statutes of the applicable states.

4. Listing you as an additional insured on their Commercial General Liability policy.

Failure to comply with this condition may alter the coverage provided under this policy. However, should the insured fail to comply, for the sole purpose of computing rates and premium, independent contractors will be considered employees of the insured and a charge will be made accordingly. The entire cost of the work sublet will be used as the premium base for the work performed.

All other terms and conditions remain unchanged.

Doc. #32-4, p. 6.

The policy also provided that its coverage was excess to "[a]ny other primary insurance available to [the insured] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [the named insured] has been added as an additional insured by attachment of an endorsement." Doc. #32-4, p. 4.

AG Security insured Memorial Road Plaza. It paid for the water damage to the building and its contents and asserts it has made a claim to recover those funds from Mustang Roofing and Antunez. Maxum filed this action seeking a declaration that its policy provides no coverage for the water damage caused by the storm. Alternatively, it seeks a declaration that its policy provides coverage in excess of the coverage provided by ACIC, who insured Antunez.

## Analysis

Maxum contends the policy it issued Mustang Roofing does not provide coverage for the damage to Memorial Road Plaza because of two policy provisions, the Roofing Contractors Endorsement and the Independent Contractors Warranty Endorsement. AG Security and Mustang Roofing respond that fact questions exist which preclude summary judgment on the basis of the first endorsement and the policy does not provide that coverage is excluded for noncompliance with the second endorsement. ACIC opposes the motion only to the extent Maxum asserts that "its policy is excess to that of ACIC

because Mustang Roofing [] is an additional insured under ACIC's policy." Doc. #33, p. 2.

Two conditions must be met, Maxum claims, for coverage to exist under the Roofing Contractors Endorsement: the insured must have taken prudent steps to learn about any approaching adverse weather and also must have provided an appropriate temporary covering for the roof. While Maxum has assumed, for purposes of its motion, that the first condition was satisfied, it contends the evidence establishes that the second condition was not met.

Maxum ignores several key pieces of uncontroverted evidence. Gore's testimony that the National Weather Service had not predicted the storm that produced four inches of rain and high wind was undisputed. Also undisputed was his testimony that the method Antunez used, of extending the TPO roof covering material a few feet past the wood fiber insulation and then securing the unattached edge of the TPO material by weighting it down with buckets of adhesive, screws and rolls of unused TPO roof material, was adequate to secure it for the weather that had been forecast. However, Gore's testimony and written statements regarding the roofing crew's performance with respect to caulking some of the penetrations and whether that caused the water damage to the property were equivocal.[8] That evidence creates material fact questions as to whether

---

[8]*See Doc. #32-2, p. 4, Question #5 ("Antunez failed short on July 23 of getting roof 100% completed & dried in. Detail work around all penetrations & AC curbs was not completed. On July 23rd /24th roof flooded out due to a storm that popped out of nowhere. Detail work would have taken approximately four hours. That was the cause of the building flooding.).*

the insured provided a "suitable temporary covering able to withstand the normal elements." Doc. #32-4, p. 7. Summary judgment is not warranted in Maxum's favor based on the Roofing Contractors Endorsement.

Maxum asserts that the Independent Contractors Warranty Endorsement guarantees that it will be indemnified for losses resulting from the work of any subcontractor Mustang Roofing hired. If Mustang Roofing failed to comply with the endorsement and obtain the required certificate so that it was an additional insured under the insurance policy Antunez purchased from ACIC, Maxum claims there is no coverage under its policy. If, however, Mustang Roofing satisfied the endorsement, Maxum contends that its coverage would be excess to ACIC's policy, due to its policy's excess insurance provision.

As ACIC points out, Maxum has failed to demonstrate that it was an additional insured under ACIC's policy. Maxum merely asserts that "[t]he certificates provided by Antunez identify Mustang Roofing as the certificate holder" and that, "[a]lthough the certificates declare they do not amend or alter the coverage afforded by the identified [ACIC's] policies, such declaration does not, by itself, dispel Mustang Roofing's status as an additional insured." Doc. #32, p. 14.[9] That is not enough to establish, at least for summary judgment purposes, that Mustang Roofing was an <u>additional insured</u> under

---

[9]*Maxum also argues that another clause on the certificates "could be construed as incorporating such contract or other document sufficient to impart insured status to Mustang Roofing, or at least, supporting a reasonable expectation of the same on behalf of Mustang Roofing." Doc. #32, p. 14. For purposes of summary judgment, Maxum is required to do more than than to show that a clause "might be construed" or might support a reasonable expectation.*

ACIC's policies.

The question then becomes what is the effect of Mustang Roofing's noncompliance with the fourth condition of the endorsement. Maxum claims it means the policy does not provide coverage for the damage to the Memorial Road Plaza. However, there is no support for that conclusion in the policy language, which states that "[f]ailure to comply with this condition may alter the coverage provided under this policy" and "should the insured fail to comply, for the sole purpose of computing rates and premium, independent contractors will be considered employees of the insured and a charge will be made accordingly." Doc. #32-4, p. 6.

The two cases Maxum cites, <u>Mt. Hawley Ins. Co. v Total Bldg. Sys., Inc.</u>, 2008 WL 2757076 (D.Ariz. July 14, 2008) and <u>NVR, Inc. v. Nat'l Indem. Co.</u>, 2010 N.J. Super. LEXIS 2336 (N.J.Super.Ct.Law Div. Aug. 20, 2010) demonstrate the fallacy of its position. <u>Mt. Hawley</u> involved a commercial general liability insurance policy issued by Mt. Hawley that included a contractor's endorsement similar to the Independent Contractors Warranty Endorsement. However, the policy "<u>voided</u> any coverage for liability caused by subcontractors unless those subcontractors fully insured their work and indemnified Mt. Hawley." <u>Mt. Hawley</u>, 2008 WL 2757076, at *2.[10] The parallel provision in <u>NVR</u> was actually titled an exclusion – Independent Contractors and Sub-

---

[10]The endorsement in the policy in <u>Mt. Hawley</u> provided that "[i]n the event the insured fails to comply with the above conditions for a subcontractor whose work directly or indirectly gives rise to a claim, coverage for such claim will be voided under this policy." <u>Mt. Hawley,</u>2008 WL 2757076, at *2.

Contractors Coverage Requirement <u>Exclusion</u>. <u>NVR,</u>, 2010 N.J. Super. LEXIS 2336, at * 12. It expressly provided that the insurance would <u>not</u> <u>apply</u> to injuries or damage caused by independent contractors or subcontractors performing work for the insured unless four conditions like those in Maxum's endorsement had been satisfied.

There is no similar language in the policy Maxum issued Mustang Roofing. Maxum is correct that the endorsement "unambiguously explains" that the conditions are included as part of the policy and the policy does state that noncompliance with the condition may change the policy's coverage. However, nowhere does the policy state, as did the policies in <u>Mt. Hawley</u> and <u>NVR</u>, that noncompliance with the conditions would result in the loss of coverage. Maxum cites no authority that supports construing its endorsement, as written, as an exclusion. <u>Traders State Bank v. Continental Ins. Co.</u>, 448 F.2d 280 (10th Cir. 1971), cited by Maxum in its reply brief, is inapposite.

As Maxum has failed to show that it is entitled to summary judgment on the basis of either the Roofing Contractor Endorsement or the Independent Contractors Warranty Endorsement, its motion for summary judgment [Doc. #32] is **DENIED**.

**IT IS SO ORDERED**.

Dated this 9th day of September, 2015.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE